UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| NOAH WAYNE NEVIL, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-00098-SEB-DML |
| | ) | |
| JOHN P. CLICK Dentist, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING MOTION FOR SUMMARY JUDGMENT
FILED BY DEFENDANT CLICK**

For the reasons explained in this Entry, defendant Click's motion for summary judgment, dkt. 38, is **granted.**

## I. Background

Plaintiff Nevil Wayne Nevil, Sr., is a prisoner who brings this 42 U.S.C. § 1983 civil rights action against dentist John P. Click and Nurse Practitioner Roy Washington. Mr. Nevil alleges that the defendants violated his constitutional rights in relation to his dental care when he was a pretrial detainee at the Floyd County Jail (the Jail).

Both defendants seek resolution of the claims against them through summary judgment. Dr. Click's motion for summary judgment is considered in this Entry. Dkt. 38. Mr. Nevil responded to the motion for summary judgment, dkt. 65, and Dr. Click replied, dkt. 66. The motion is ripe for resolution.

## II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(c)(1), the following facts are undisputed for purposes of the motion for summary judgment.

Dr. Click is a licensed dentist, practicing for over thirty-three years, with a private dental practice in southern Indiana. Dkt. 41-6 at ¶¶ 3-6.) In addition to his private practice, on January 14, 2008, Dr. Click entered into a part-time employment agreement with Mid America Health, Inc. (MAH) to provide dental services within various correctional institutions for up to ten hours per week. *Id.* at ¶¶ 6-7. On November 14, 2017, MAH entered into an agreement with the Floyd

County Sheriff's Department to provide on-site dental services to inmates. *Id.* at ¶ 8. Through MAH, Dr. Click provided dental services to inmates at the Jail upon request by Jail officials. *Id.* at ¶ 9; dkt. 41-4; dkt. 41-5.

Approximately every six weeks, Dr. Click sets up a mobile dental unit at the Jail and sees inmates who have been scheduled by the Jail. *Id.* at ¶ 10. On more than one occasion, Dr. Click saw Mr. Nevil, who suffers from severe tooth decay and gum disease. *Id.* at ¶ 11. On April 2, 2018, Mr. Nevil was scheduled for a visit with Dr. Click to have teeth #2 and #3 extracted due to severe decay. *Id.* at ¶ 12. Prior to the extractions, Mr. Nevil signed an Informed Consent for Extraction of Teeth, in which Mr. Nevil agreed that he understood, among other things, that "[a] certain amount of post-operative discomfort and pain is to be expected for several days and should be controlled with pain medication." *Id.* at ¶ 13; dkt. 41-7.

On April 2, 2018, Dr. Click performed extractions of Mr. Nevil's teeth #2 and #3 using a strong anesthetic, which typically causes numbness that lasts four to six hours. Dkt. 41-6 at ¶¶ 12, 17. The extractions were routine and uncomplicated. *Id.* at ¶ 18; dkt. 41-8. Immediately after the extractions, Dr. Click inspected both teeth and determined that he had extracted them both fully intact. Dkt. 41-6 at ¶ 19. He then inspected Mr. Nevil's sockets and determined again that there were no root fragments remaining. *Id.* at ¶ 20. Dr. Click then placed gauze in Mr. Nevil's socket to slow any bleeding and to ease the normal post-operative pain. *Id.* at ¶ 21. He instructed Mr. Nevil to keep gauze on the sockets for at least thirty minutes and to avoid any disturbance to that part of the mouth until healed. *Id.* at ¶ 22.

Dr. Click does not prescribe medications at the Jail. *Id.* at ¶ 23. Instead, Jail nurse practitioners have standing orders to prescribe appropriate medications and it is within their duties to do so. *Id.* at ¶ 24.

Later that same day while Dr. Click was still at the Jail providing dental services to other

3

inmates, he was notified by a Jail official that Mr. Nevil was complaining of pain and claiming that some root fragments were left behind. *Id.* at ¶ 25. Because Mr. Nevil's extractions were uncomplicated and because Dr. Click had performed a post-operative inspection of the extracted teeth and sockets, he knew no root fragments were left behind. *Id.* at ¶ 26. Therefore, Dr. Click recommended that Mr. Nevil be told to follow his post-operative care instructions and to bite down on some gauze to ease any pain or bleeding. *Id.* If Dr. Click had been made aware by Jail officials of any further complaints or issues regarding Mr. Nevil's teeth extractions, he would have been willing to make an unscheduled visit to check in with Mr. Nevil. *Id.* at ¶ 27. Dr. Click was never contacted again regarding Mr. Nevil. *Id.* at ¶ 29. In fact, Dr. Click was unaware of any further issues with the extractions until Mr. Nevil's complaint was served on him in early August 2018. *Id.* at ¶ 30.

On April 24, 2018, Mr. Nevil saw Dr. Forsee, an oral surgeon. Dkt. 41-10 at ¶ 3. Mr. Nevil was complaining of soreness after having two teeth extracted. *Id.* at ¶ 4. Dr. Forsee examined Mr. Nevil and believed he could smooth the residual ridge to possibly quicken Mr. Nevil's recovery time. *Id.* at ¶ 5. Dr. Forsee made an incision from tooth #1 to tooth #5, smoothed the residual ridge with a bone file, treated the surgical site with saline, and closed the incision. *Id.* at ¶ 6. He found no root fragments or any other problems with the extractions performed by Dr. Click. *Id.* at ¶¶ 8-9. In fact, Dr. Forsee's procedure on Mr. Nevil was routine and nothing remarkable at all. *Id.* at ¶ 11. Dr. Forsee's procedure was not to treat a serious medical condition. *Id.* at ¶ 10.

At the request of Dr. Click, Dr. Baratz submitted an expert report on Mr. Nevil's claim. Dkt. 41-11 at ¶ 3; dkt. 41-12. Dr. Baratz is both a dentist and physician in Massachusetts. Dkt. 41-12 at 1. He is currently the president and medical director of South Shore Health Care, Inc. and a faculty member of both the Boston University School of Medicine and Tufts University in the

Department of Medicine. *Id.* at 1-2. Over the last 25 years, Dr. Baratz has been retained by more than twenty licensing boards, federal agencies, insurance companies, and law enforcement agencies to offer expert opinions on the quality and standards of care in the practice of dentistry and medicine. *Id.* at 2. Dr. Baratz reviewed Mr. Nevil's complaint and medical records obtained from the Jail and from Dr. Forsee. Dkt. 41-12 at 3-5.

It is Dr. Baratz's opinion that Dr. Forsee's radiographs of Mr. Nevil and the examination by Dr. Forsee on April 24, 2018, showed no evidence of retained root fragments, nor any evidence of infection. *Id.* at 8. Dr. Forsee performed a routine operation to smooth Mr. Nevil's bone and then closed the wound with suture. *Id.* at 7. Dr. Baratz stated that "having rough bony edges from residual sockets of extracted teeth can commonly occur and is easily managed." *Id.* at 8. "Such ridges do not typically become obvious until the sockets have healed, several weeks after the extraction, which is what happened in Mr. Nevil's case." *Id.* The records also reflect that Mr. Nevil's complaints of pain were managed effectively by medical personnel. *Id.*

It is also Dr. Baratz's opinion that Dr. Click did not deviate from the appropriate standard of care. *Id.* at 7-8. He further opined that Dr. Click gave Mr. Nevil appropriate post-surgical care instructions. *Id.* at 7. Finally, Dr. Baratz's opinion is that Mr. Nevil did not have a serious medical condition at any relevant time between the procedure performed by Dr. Click and the one performed by Dr. Forsee. *Id.* at 8.

**B. Discussion**

Mr. Nevil was a pretrial detainee when the relevant incidents occurred. Rather than the deliberate indifference standard applied to convicted inmates under the Eighth Amendment that has been discussed by the parties, for pretrial detainees, the standard under the Fourteenth Amendment's Due Process Clause requires a showing that the defendants' conduct was objectively

unreasonable. *McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018); *Miranda v. County of Lake,* 900 F.3d 335, (7th Cir. 2018).

To evaluate a Fourteenth Amendment due process claim challenging medical treatment, the Court considers two questions. The first "focuses on the intentionality of the individual defendant's conduct," and "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [plaintiff's] case." *McCann,* 909 F.3d at 886 (internal quotation omitted). "A showing of negligence or even gross negligence will not suffice." *Id.* At the second inquiry, the Court asks "whether the challenged conduct was objectively reasonable." *Id.* To determine what was objectively reasonable, the Court is required to consider "the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Id.*

With regard to Mr. Nevil's assertion that Dr. Click or his medical expert "overlooked" other medical conditions, any such non-dental issues fall outside the scope of this case. Mr. Nevil's complaint alleged only issues with his teeth and when the Court screened the complaint, those were the only claims that were allowed to proceed. Dkt. 8. Mr. Nevil cannot now raise concerns that were not mentioned in his complaint. *See Colbert v. City of Chicago,* 851 F.3d 649, 656 (7th Cir. 2017); *Abuelyaman v. Ill. State Univ.,* 667 F.3d 800, 813-14 (7th Cir. 2011) ("It is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion."); *Messner v. Calderone,* 407 F. App'x 972, 974 (7th Cir. 2011) ("A plaintiff cannot add additional claims through arguments made in opposing summary judgment….").

Mr. Nevil's claims against Dr. Click are that he left behind root fragments when he extracted two teeth and failed to properly respond to his complaints of pain. It is Dr. Click's

6

opinion that no root fragments were left behind after the April 2, 2018, extractions and that any post-operative pain Mr. Nevil may have experienced was normal. Dkt. 41-6 at ¶ 31. This opinion was affirmed by the oral surgeon, Dr. Forsee, who saw Mr. Nevil on April 24, 2018. The medical expert, Dr. Baratz, also stated that, "Mr. Nevil is simply incorrect when he alleges that 'root fragments' remained after the extractions by Dr. Click." Dkt. 41-12 at 7. There is no evidence supporting Mr. Nevil's claim or fear that root fragments were left in his mouth.

Before the extractions, Mr. Nevil signed a consent form which informed him that a certain amount of post-operative pain was to be expected for several days. Dkt. 41-6. To the extent that Mr. Nevil asserts that Dr. Click did not give him any pain medications on April 2, 2018, the record is undisputed that Dr. Click did not prescribe medications for his Jail patients and that Jail medical staff were responsible for doing that. Dr. Click was notified on April 2, 2018, while he was still at the Jail, that Mr. Nevil was complaining of pain and believed that root fragments were left behind. Dr. Click knew that no root fragments existed. He also knew that some pain was normal. At that time, Dr. Click recommended that Mr. Nevil bite down on the gauze to ease any pain or bleeding. This was the only time Dr. Click was notified of any complaints from Mr. Nevil relating to the extractions. Dr. Click did not ignore Mr. Nevil's complaints on April 2, 2018.

To the extent Mr. Nevil contends that Dr. Click left him in severe pain for 22 days, the record does not support this assertion. In fact, Dr. Click was not notified of any complaints from Mr. Nevil after the day he extracted the two teeth.

Mr. Nevil further argues that Dr. Click should have filed down the bone when he extracted his teeth. Dkt. 65; dkt. 70. Mr. Nevil contends that the medical expert, Dr. Baratz, supports this contention. To the contrary, Dr. Baratz opined that "[t]he procedure of smoothing the residual bone after a dental extraction is entirely routine…" Dkt. 41-12 at 7. He further stated that such ridges

7

do not typically become obvious until several weeks after the extraction, which is what happened with Mr. Nevil. *Id.* at 8. No medical provider opined that the smoothing of the bone after the extraction could or should have been done at the time of the extractions.

Mr. Nevil also argues that the oral surgeon, Dr. Foresee, gave two different statements--one at the time of the surgery and the one that was signed months later. Dkt. 65 at 4. While there is a medical chart dated April 24, 2018, in which Dr. Forsee describes the procedure he performed, dkt. 65-1 at 11, there is only one affidavit signed by Dr. Forsee in the record. *See* dkt. 41-10. There are no conflicting reports or statements in the record from Dr. Forsee.

Having assessed the totality of the circumstances, the Court finds that no reasonable jury could find that Dr. Click left root fragments in Mr. Nevil's mouth. No reasonable jury could find that Dr. Click acted recklessly when he extracted Mr. Nevil's teeth. The extractions were routine and there is no evidence that Dr. Click was negligent in his treatment. Even if there had been a showing of negligence, which there was not, such a showing would not be sufficient for Mr. Nevil to survive summary judgment on his claims. Finally, it was objectively reasonable for Dr. Click to not prescribe pain medications on April 2, 2018. One, he was not authorized to prescribe medications for Jail inmates and knew other providers could do so. Two, he responded to Mr. Nevil's complaints of pain by instructing him to bite down on the gauze, because some pain during the first few days after surgery was normal. No reasonable jury could find otherwise.

### IV. Conclusion

For the reasons discussed above, Dr. Click's motion for summary judgment, dkt. [38], is **granted.**

**IT IS SO ORDERED.**

Date:   2/19/2020

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

NOAH WAYNE NEVIL, SR.
921651
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
jdawson@taftlaw.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

David L. Guevara
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
dguevara@taftlaw.com